Martin, J.
This is an action to contest tlie validity of an election held in the city of East Liverpool on June 22, 1907, under the provisions of Section 4364-20®, Revised Statutes of Ohio, commonly known as the Beal local option law.
The contestant, Ambrose E. Webber, alleges in his petition in substance that he is a qualified elector of the city of East-. Liverpool; that no valid petition for said election was presented to the council or filed with the mayor of said city within thirty days next preceding the date of said election; that a petition purporting to be signed by forly per cent, of the qualified electors of said city was presented and filed with its mayor on May 11, 1907, which petition was presented to council on the 14th day of May, 1907, and was then and there filed with the clerk of said city, the date of the filing endorsed thereon, and from that time became a public document required to be by law preserved for reference and inspection; that upon the 20th day of May- the council of said city considered said petition, and did order a special election to be held June 8, 1907, to determine whether the sale of intoxicating beverages shall be prohibited within the limits of said city; that thereafter, on the 25th day of May, 1907, persons unknown to the petitioner, without authority or legal right to do so, but unlawfully, did change or procure to be changed the date of filing the same, and substituted a different date, to-wit, May 25,1907; and that thereafter the council of said city, without any other petition being filed did, on May 27, order a special election to be held on June 22, 1907, to determine *470 by ballot whether the sale of intoxicating liquors as a beverage shQulcl be prohibited in said city.
The contestant says that the change in the date of filing the petition was unauthorized, unlawful and void; that the election following was likewise void, and he therefore asks that it be so declared and set aside. To this petition an answer was filed setting forth the facts anteceding said .election'as claimed by the city of East Liverpool. The case has been heard on the evidence submitted by the contestant in support of his petition, at the conclusion of which defendant moved the court to dismiss the petition and render judgment in favor of said city, and this case is now submitted on said motion.
The gist of the contention between the parties litigant, is as to whether or not the evidence submitted sustained the allegation of the petition, that—
“On the 25th day of May, 1907, persons unknown to the petitioner, without- authority or legal right to do so, did change or procure to be changed, the date of filing of said petition. ’ ’
The evidence submitted shows the petitioner to be a qualified elector of the city of East Liverpool, having the legal status to bring this action; -that on May 11, 1907, Drs. Taggart and Lane, acting for and in behalf of the petitioners, presented to the may- or of the city of East Liverpool, a petition containing 1,760 signatures of the qualified electors of said city, being more than forty per cent, of the entire vote cast at the last preceding general election, asking said council to order a special election, to ascertain the will of the voters whether the sale of intoxicating liquors as a beverage should be prohibited within said municipal corporation. At the time this was received the mayor endorsed it as follows: “Filed with me this 11th day of May, 1907. W. Y. Blake, mayor of the municipal corporation.”
On the 14th day of May, Mayor Blake presented the petition to council and a committee was appointed on said date to ascertain if the petition contained the requisite number of names. This committee reported that it had, and thereupon council passed a resolution fixing the 8th day of June as the time of holding an election for the purpose stated in the petition. The petition was then endorsed, “Presented to council on the 14th *471 day of May, 1907. W. V. Blake.” And now the trouble comes. Section 2926-5, Revised Statutes, provides for the right of registration in a city like East Liverpool, where the registration •law was in force, on Friday and Saturday in the second week before such election. It was the duty of the clerk of council to have notified the clerk of the board-of deputy state supervisors of election for Columbiana county that such election was to. be held, in order that provision for such registration might be arranged for. This the clerk of council failed to do. The oversight was not discovered until May 24. May 24 and 25 were the days when registration for said election should have been made by the electors, in order to hold an election on June 8th as the council had ordered.; and it was therefore discovered by the representatives of those petitioners that no valid election could be held on June 8th, the date fixed by council, for lack of such notice.
Under these circumstances the evidence shows that Drs. Lane and Taggart again went to the clerk of council and asked to withdraw the petition they had filed, and to refile it as a new petition.
They talked with him about it and what had best be done, so Mr. Davidson testified. ITe gave them the petition they had filed, and they carried it away. They took it again before. Mayor Blake, and in his presence and as the court finds from all the circumstances, by his assent, the figures “11,” in the date of filing were erased and the figures “ 25 ” were substituted, and it was refiled as of that date. Mayor Blake received the petition from them, and with the date of its refiling on it over his sig: nature again delivered it to the clerk of council, Davidson, who made the following notation for entry, he says for his own benefit, in the records of council:
“East Liverpool, 0., May 25, 1907. The petition for an election under the provision of the Beal law presented to council May 14, 1907, was this day withdrawn by the Revs. T. W. Lane and j. C. Taggart, and after being presented to the mayor was returned to this office as a new petition. ’ ’
The evidence further shows that the petition as refiled was again on May 27 presented to council, which treated it as a new *472 petition, took action up'on it de novo, found it contained the requisite number of signatures of qualified electors, and passed another resolution as of May 27, fixing the date of the election on June 22, 1907, and ordering the clerk of council to give notice to the deputy board of state supervisors of election of their action, which was done. And the petition was then refiled with the clerk of council, where it has since remained.
Under this resolution matters proceeded in the usual course; an election was held on the day fixed, resulting in a vote of 2294 against the sale of and 2005 for it, a majority against of 289. No allegation or claim is made that the actual conduct of the election was not absolutely fair.
It therefore appears that the question here to be determined relates to the rights of the petitioners to withdraw their petition and file it de novo, as was done in this case, after it became manifest that the election could be held on the first filing. Was their action unlawful or unauthorized as alleged in the petition ? The question is difficult, and has been ably argued by Counsel on both sides. Authorities too numerous to analyze or discuss fully have been cited, but all. and many others have been examined as carefully as time would permit.
The statute governing the election in question is as follows:
“That when over forty per cent, of the qualified electors of any municipal corporation shall petition the council thereof for the privilege to determine by ballot whether the sale of intoxicating liquors as a beverage shall be prohibited within the said limits of said municipal corporation, such council shall order a special election to be held in not less than twenty nor more than thirty days from the filing of such petition with the mayor of the municipal corporation or from the presentation of such petition to said council, which said petition shall be filed as a public document with the clerk of the municipality, and preserved for reference and inspection, and which election shall be held at the usual place or places for holding municipal elections.”
It is argued with much force and persuasiveness by counsel for contestant, that the latter clause of this act is inhibitory of the right to withdraw the petition, after it had once been filed; that its refiling as a new petition was therefore nugatory and conferred no jurisdiction upon council to order the election of June 22.
*473 A line of demarcation may be pointed ont by the decisions of this and other states, between the statutes or portions of the same statute, which are mandatory in their provisions and those which are directory only. The distinction thus existing is often difficult to distinguish or define.
In ascertaining the difference between mandatory statutes and those which are merely directory, this rule has been laid down: “Where certain acts required to be done, are of the essence of the thing required to be done by the act, it is imperative.” Smith, Comm., 679.
In Am. & Eng. Eney. of Law, Volume 26, page 688, the rule is laid down in exactly the same language. ' Lord Penzance, in Howard v. Bodington, 2 P. D., 203, whose language is quoted with approval in McLaughlin v. Michael, 14 S. D., 195, states the rule as follows:
“I believe as far as any rule is concerned, you can not go farther than that in each case; you must look to the subject-matter, consider the importance of the provision that has been disregarded, and the relation of that provision to the general object intended to be secured by the act, and upon a review of the case in that aspect decide whether the matter is what is called imperative or only directory. ’ ’
Recognizing the above distinction, it has been convincingly shown by counsel for defendant, that the great weight of authority is to the effect that the time fixed by statute for holding an election is mandatory and an election held at'a subsequent date would be void. 52 O. S., 138; 32 O. S., 464; 10 Kansas, 129; 3 N. P., 353.
Yet it is likewise established that many of the incidents of procedure are directory only, and that disregard does not invalidate the election. Thus although R. S. 2966-35 provides that “all marks upon a ballot must be made by a black lead, pencil, ’ ’ our own circuit court in a case in which I was counsel has held that “a ballot containing a candidate’s name in blue pencil will be counted for such candidate, whether contestant expressly consents that it may be or not.” State v. Conser, 5 C. C.—N. S., 119.
Again, while under the Beal law notice of an election is required to be given by publication of the full period of ten days *474 before the election, it is held in Fike v. State, 4 C. C.—N. S., 81, that—
“A failure to publish notice for the full period of ten days is not fatal to the validity of an election where the election was otherwise fair and no one was injured or misled.”
Again, in Greggs v. Rodgers, 1 Dec., 163, it is said:
“A non-observance of the requirements of an election law .which did not affect the result of the election, its fairness and honesty, will not invalidate it, although such requirements are mandatory in form.”
Numerous other decisions may be found in this state and elsewhere supporting the proposition that—
‘ ‘ Where the. thing to be done is not of the essence of the thing required to be done by the act, the provision is merely directory and disobedience is not necessarily fatal.” Harpster v. Brewer, 4 C. C., 395.
Applying all these tests to that part of the statute in question, which requires the petition in this ease to be filed as a public document and to be preserved for public reference and inspection, -and we go far in determining whether that provision ,is imperative or only directory, was the keeping of a dead petition on file of the essence of the Beal law ?
The very essence and purpose of the act is to ascertain the sentiments of the people on a great public issue within thirty days from the filing of the petition. It is to secure an election. What relation has the part of the act just quoted to the general purpose intended! Evidently two. First, it is intended that the public may ascertain that no names are improperly on the petition, and that it shall have the signatures of forty per cent, of the qualified electors. Second, that after the election has been held, proof may be retained of its validity, and of the right to impose the penalties of the law for its violations, if the election results in the exclusion of the sale of intoxicating liquors as. a beverage from the municipality.
But when one of the city officials fails to give the notice required by law, and it becomes apparent that no valid election could be. held within the thirty days of its filing, both of these *475 purposes of preserving the petition as a public document cease to exist. It has become a bit of useless junk, not even valuable as a curiosity. It is a familiar maxim that “the law never requires the doing of an idle thing,” and I can not believe that the Legislature ever intended under circumstances such as exist here that this bulky pile of foolscap, with its 1760 signatures, should be preserved among the public archives of the city council as a monument to the neglect or inefficiency of some official. If so, it was likewise mandatory, notwithstanding the failure to give notice to likewise go on and perform the idle task of holding an election, which every one knew would be void, and surely no one could claim this should have been done. Had proper notice 'been given and an election held under the first resolution, would the fact that some designing party had wrongfully stolen and carried off this petition have invalidated the election? Certainly not; and I therefore conclude that this part of the section is to be classed as directory as distinguished from mandatory.
Now, it is fairly held by numerous decisions in this state that any time before action is taken upon it, parties may withdraw their names from a petition such as this. This is distinctly held in Dutton v. Village of Hanover, 42 O. S., 215, a case which went to the Supreme Court from this county; also Hays v. Jones, 27 O. S., 218; Grinnell v. Adams, 34 O. S., 44; Cole v. Columbus, 2 N. P.—N. S., 563; In re Petition for Special Election in Toledo, 2 N. P.—N S., 469.
In Haynes v. The Village of Hillsboro, 3 N. P.—N. S., 17, Judge Hughes cites the above cases with approval and applies their doctrine to a petition under the Beal law. In that case a contest of the election was had before Judge Hughes of Highland county. The evidence disclosed that a petition containing 586 names, being more than forty per cent, of the qualified electors of the village, was filed with council. But before council took action 110 of the signers requested council to withdraw their names from the petition. This would have reduced the petitioners to less than the requisite forty per cent. But the council, evidently on the assumption that the provision of the act making the petition a “public document to be preserved for *476 inspection,” etc., was mandatory and that the petitioners could not withdraw, ordered the election to be held. It resulted in the village voting dry, and on the election being contested Judge Hughes declared the election invalid on the ground that the 110 names should have been withdrawn.
Again, in City of Columbus v. Patrick, Glackin, 3 N. P.—N. S., 356, Judge Bigger decided as follows:
“A petition for an election under the Brannock law may be withdrawn and the boundaries of the proposed district changed and the petition re-filed; and it is immaterial if, in re-filing, the old sheets are used without having the signers re-write their names, provided only that the signers assent to the change and constitute forty per cent, of the electors of the district.”
Now the statute governing an election under the Brannock law and the Beal law are almost identical, the only difference being, that the provision that “the petition shall be a public document and preserved,” etc., is absent from the Brannock law. But if the doctrine laid in the' Hillsboro case that 110 of the petitioners may withdraw, it follows as a corollary that all may withdraw, which is equivalent to a withdrawal of the petition, because .there can be no petition without petitioners. And I see no reason why they may not again immediately petition for an election, or, as in the case of Columbus v. Glackin, supra, again file their petition.
The contestant relies on the case of State v. Webb, 49 Missouri, Appeals, 407, as overthrowing the doctrine of these cases. In that ease the syllabus is:
“A petition for the enforcement of the local option law was presented on July 10, and an order made for an election in the county, excluding two towns supposed to have 2,500 inhabitants each. On August 1, a part of the petitioners (but without any authority) moved the court to set aside the order, which was done; and thereupon they withdrew the petition and at once again presented it, and an election was ordered for August 31 in the county, and one of the towns excluded in the prior order. Held: . An idle perlormnace; that there was only one petition presented and that was on July 10, which then served its purpose, and from that time on was powerless to institute another such proceeding. ’ ’
It will be found in the analysis of this case that it differed in *477 two very important respects, both from the cases cited and the case at bar.
1. The petition filed the second time was, at least in its effect, not the same .petition. Between the first and second filing of the petition the circuit court of the county had declared the census of Iiarrisonville, one of the two towns referred to, invalid. The petition was therefore withdrawn and re-filed so that it would include this additional town within its provisions. As the court said:
“On July 10, 1888, about eighteen hundred voters living throughout Cass county, presented their petition to the county court looking to the enforcement of local option in the county outside of the two cities of Plarrisonville and Pleasant Hill. All then were of the opinion that both of these towns had twenty-five hundred inhabitants, or more, and hence, under the law, it was conceded that each of these cities was entitled to fix its own status in the sale or prohibition of intoxicating liquors. ’ ’
The petition filed the second time was therefore in effect a different petition. . It would accomplish a purpose the petitioners did not contemplate when they signed it, and they would no more be bound by it than one would by a note which was altered after he had signed it, without his assent.
2. The Missouri case is distinguished from the cases cited, by the finding of that court, as a matter of evidence, that the second filing was without the authority of the petitioners.
Can this court make a similar finding in the case at bar ? The burden is upon the plaintiff to establish, the allegations of his petition by evidence. Is there any evidence showing that Drs. Taggart and Lane had no authority to act for these petitioners in the re-filing of the petition? Not a scintilla of evidence is submitted upon this point. Under these circumstances what must be the finding of this court? It seems to us that the well known legal maxim, Omnia praesumuniur rite esse acta, donee probetur in contrarium, should be invoked here. The rule that all things are presumed to be rightly done until the contrary is proven has frequently been applied for the purpose of sustaining the validity of official action. Am. & Eng. Enc. of Law, Yol. 22, page 1266.
*478 And again: “Equity regards that as done which ought to have been done.” 11 Am. & Eng. Enc. of Law, 180.
These maxims are given full effect in a case like this — Frank Dalrymple v. The State of Ohio—found in 5 C. C.—N. S., 185. The second and third syllabi are as follows:
“2. Where a duly and legally constituted legal body, such as a city or village council, has acted, the presumption is, in the absence of evidence to the contrary, that it has acted lawfully, and had before it sufficient facts to warrant it in acting. This presumption is in the nature of evidence, and until overcome by other evidence, it stands as proof of the fact in question.
“3. The presumption is that a petition for an election under the Beal local option law, in due and legal form, and signed by forty per cent, of the qualified electors of the municipality, was presented to council as required by Section 4364-20», Revised Statutes, when it appears from the council record that a petition was presented asking for an election, that it was duly acted upon, and that an election was ordered at a certain date.”
Applying these maxims this court can not find that Drs. Lane and Taggart were not invested with sufficient authority from the signers of this petition to withdraw and re-file it as they did. The finding must be to the contrary. These men acted as the agents of the petitioners for the purpose of presenting their petition to council.
1 ‘ The general presumption is that public officers perform their official duty, and that their official acts are regular, and where some preceding act or pre-existing fact is necessary to the validity of an official act, the presumption in favor of the validity of the official act is presumptive proof of such preceding act or pre-existing fact.” 22 Am. & Eng. Enc. of Law, 1267.
We are compelled therefore to presume that when council acted upon the petition filed the second time, they were acting upon a petition which had been properly signed, presented, and its presentation to them duly authorized, by the signers, in the1' absence, of all evidence to the contrary.
But it said that the withdrawal of this petition would be a violation of the provisions of Section 7095, which provides that—
“Whoever maliciously alters, defaces, abstracts, or conceals i:= * * any paper or writing duly filed within or by any court, *479 office, or officer, shall be fined not more than three hundred dollars, or imprisoned not more than three months, or both.”
It is contended that what was done by Drs. Lane and Taggart was in violation of provisions of this act, and that this court can not find that this paper was properly withdrawn and re-filed without .giving effect to an act which was in and of itself a misdemeanor. This court can not so find. The provision is that “whosoever maliciously alters, defaces, abstracts or conceals,” etc. Can any court under the facts proven in this case find that the action of Drs. Taggart and Lane was malicious? The presumption, as we have shown is, that it ivas authorized by the signers. As shown by the case of Haynes v. Hillsboro, supra, these petitioners, or any number of them, had the legal right to withdraw from the petition, and if this right existed it carried with it the right to withdraw the petition itself, as it seems to us. The act of withdrawing this petition and of re-filing it, can not be said, under the holdings of the court, to be unlawful, and therefore was not malicious. These men were made the agents of the petitioners for the purpose of securing the election. It can not be presumed that they acted without authority in any matter within the scope of their agency, and the securing of a valid election, being the ultimate purpose of the petitioners, this ■court will presume, under the circumstances of this' case, that Drs. Lane and Taggart were invested by these petitioners with full authority to do every act which might be necessary to accomplish that purpose.
The circumstance which distinguishes this case from all others that have been cited, or which the court-has been able to find, is that where withdrawals from a petition have been allowed and the action sustained, it has been done before official action on the petition had been taken; but in the case at bar official action had been taken on the petition first filed, when it was discovered that this action could not be legally carried into effect because of the failure to give notice. In the Hillsboro case above cited the withdrawals had been requested before the order was made; and likewise in the case under Brannock law, the petition was withdrawn and re-filed before any order fixing- the *480 time of the election had been made upon it. This distinction has given the court more difficulty than any other circumstance in the case, and distinguishes this case from all others that have been decided. But it is difficult to distinguish, in principle, any difference between a withdrawal before an order had been made and a withdrawal after an order had been made, which had become an absolute nullity. This court is unable to perceive any difference in principle, and it would seem that in cases of this character, where questions are close and doubtful, the &oubt should be resolved in favor of the legality of the election, if it can be done. In other words, before a court will disturb an election which has been held and which closely affects the interests of a large section of the community, an election which has entailed much labor and public expense, the court should be satisfied that clear and cogent reasons exist for declaring the election illegal and setting it aside. Of this I am not satisfied in this case. The illegality of this election has not been convincingly shown.
N. B. Billingsley, for plaintiff.
Geo. E. Davidson, C. S. Speaker and W. B. Wheeler, for defendant.
Another consideration exists which should make this court cautious, before deciding the East Liverpool election invalid; because should I do so, when, in fact, it is valid, and another election similar in character should be held, that election might be attacked by some other petitioner as invalid, because held within two years of,the holding of a valid election in the same city, and thus the will of the people might be blocked for two years longer.
By these considerations and the reasoning herein given, I am constrained to decide the issue submitted to me in favor of the defendant.
The motion to dismiss plaintiff’s petition is therefore sustained.